JUAN M. SPINETTI, Respondent, v. THE ATLAS STEAMSHIP COMPANY (Limited), Appellant.

The term "mariners" includes a purser permanently attached to a vessel; and a theft or embezzlement by him is included in the term "barratry."
Plaintiff shipped, on board of one of defendant's steamships, a quantity of gold coin, receiving a bill of lading, which contained a clause exempting defendant from liability for any loss, etc., resulting from the following causes, among others: "Theft on land or afloat," "barratry of master or mariners." A portion of the money was stolen *en route.* In an action to recover for the loss, the evidence tended to show that the theft was perpetrated by the purser. The court charged, in substance, that if the gold was lost by the theft of the purser the defendant was liable. *Held,* error; that in such case defendant was exempted from liability by the clause against barratry; also, *held,* that if the purser could not be considered a mariner, so that the clause against barratry did not apply to him, then the case was within the exemption as to theft.
*De Rothschild* v. *R. M. S. P. Co.* (7 Exch., 734), *Simmons* v. *Law* (3 Keyes, 217), distinguished; *Taylor* v. *L., etc., S. S. Co.* (L. R. [9 Q. B.], 546), disapproved.
The difference in the views of the courts of England, from those of the courts of this State, as to the meaning of the words "theft" and "thieves" in policies of insurance, pointed out.
*Spinetti* v. *A. S. S. Co.* (14 Hun, 100), reversed.

(Argued November 20, 1879; decided February 27, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 14 Hun, 100.)

This action was brought to recover the value of a bag of American gold coin containing $5,000, belonging to plaintiff, shipped on board defendant's steamship Corinth at New York, to be carried to Maracaibo via Curacoa.

Two boxes of coin were shipped by plaintiff. Upon arrival at Maracaibo it was discovered that one of the boxes had been opened, and the bag of coin in question abstracted. Defendant claimed exemption from liability under certain clauses in the bill of lading delivered by it to plaintiff's agent, which are set forth in the opinion. The material facts are also there stated.

*Everett P. Wheeler,* for appellant. Robbery " on the high seas, or in any open roadstead, or in any haven, basin or bay, or in any river where the sea ebbs and flows," is piracy by the law of nations and by statute. (1 Kent Com., 183, 185; U. S. Rev. Stat., § 5370, re-enacting Act of May 15, 1820.) The words " thieves on land or afloat," in a policy of insurance, include a loss by theft on the part of the ship's company. (*Am. Ins. Co.* v. *Bryan,* 26 Wend., 563; 1 Hill, 25.) An employer may stipulate for exemption from damages for the negligence of his servants. (*Bissel* v. *N. Y. C. R. R.,* 25 N. Y., 442; *Cragin* v. *N. Y. C. R. R.,* 51 id., 61; *Carr* v. *Lancashire and Y. R. Co.,* 7 Excheq., 707.) In the case at bar the words " theft afloat" have no meaning, unless applied to theft by the ship's company. (*Del. L. and W. R. R.* v. *Bowns,* 58 N. Y., 573, 578.) Theft by the purser is barratry. He is a mariner within the meaning of the bill of lading, *i. e.,* one employed wholly upon the sea. (Malyne, Lex Mercatoria, chaps. 22, 23, pp. 102, 104; 1 Conkling (Admiralty Practice, 108, note b.); McLachlan on Shipping, 146, 148; *The Gratitudine,* 3 C. Rob., 240, 257; *The Jane and Matilda,* 1 Hagg. Adm., 187; *Ex parte Thompson,* 4 Bradf., 154, 159; *Smith* v. *The Sloop Pekin,* Gilpin, 203; *Woolverton* v. *Lacey,* 8 Monthly Law Rep., 672; *Wilson* v. *The Ohio,* Gilpin, 505; 2 Bouvier, Law Dict., vol. 2, p. 103 [14th ed.], Mariner; Abbott

Law Dict., vol. 2, p. 83, S. P.; *Boehm* v. *Combe*, 2 Maule & Sel., 172; 3 Kent's Com., 305; U. S. R. S., §§ 4573, 4574, 4575, 4511, 4612; *Hubbard* v. *Hubbard*, 8 N. Y., 191, 199; *In re goods of Hayes*, 2 Curties Ec., 338; *Ex parte Thompson*, 4 Bradf., 154, 159; Kersey's Eng. Dict., 1721; Lemon's Eng. Dict., 1783; *Anthony and Cleopatra*, act 3, scene 7.) Under the law of principal and agent, the principal is liable for the negligence of his agents, acting within the scope of their employment, but not for "the unauthorized, malicious or wilful act of the agent." (*Isaacs* v. *Third Ave. R. R.*, 47 N. Y., 122; *Frazer* v. *Freeman*, 43 id., 566; *Vanderbilt* v. *Richmond Turnpike Co.*, 2 id., 479.)

*Joseph H. Choate*, for respondent. The theft by the purser, breaking open the box and abstracting the gold, was not "theft on land or afloat," within the meaning of the exception in the bill of lading. (*Taylor* v. *Liverpool and Great Western Steam Company*, L. R. [9 Q. B.], 546; *De Rothschild* v. *Royal Mail Steamship Packet Co.*, 7 Exch. [14 Eng. L. & Eq.], 327; *Simmons* v. *Law*, 3 Keyes, 217.) The theft of the purser, if it occurred, was not "barratry by master or mariner," within the sense of the bill of lading. (2 Selwyn's *Nisi Prius*, Star, 969; · see, also, to the same effect, 2 Arnould on Ins. [McLachlan's ed.], 713; *Nutt* v. *Bourdieu*, T. R., 323; *Earle* v. *Rowcroft*, 8 East, 126–140; *Hallet* v. *Columbian Ins. Co.*, 65 N. Y., 531.) If defendant's witness, the purser, is to be believed, when he says that he delivered the gold as he received it, to the defendant's agents, the warehousemen at Curacoa, it necessarily follows that it was lost while in warehouse there, and for such loss the defendant is clearly bound to account; and, by the mere fact of such loss, negligence on its part is presumed. *Cochran* v. *Dinsmore*, 49 N. Y., 249; *Steers* v. *The Liverpool, etc., Steamship Co.*, 57 id., 1; *Gleadell* v. *Thomson*, 56 id., 194.) Negligence could be inferred from the circumstances of this case. (*Russell Manufacturing Co.* v. *N. H.*

*Steamboat Co.,* 50 N. Y., 121; *Lamb* v. *C. and A. R. R. Co.,* 46 id., 271.) Common carriers can restrict their liability only by the most clear, positive and specific exceptions in their contracts, and general clauses like the one in this case will not relieve them from liability. (*Guillaume* v. *Hamburg and Am. Packet Co.,* 42 N. Y., 212; *Edsall* v. *The Camden and Amboy R. R. Co., etc.,* 50 id., 661; *Magnin* v. *Dinsmore,* 56 id., 168; *Gleadell* v. *Thomson, supra,* 56 id., 194; *Wells* v. *The Steam Navigation Co.,* 8 id., 375; *Stoddard* v. *Long Island R. R. Co.,* 5 Sandf., 180.)

RAPALLO, J.   The clauses in the bill of lading of which the defendant claims the benefit, read as follows : "The company is not liable for any loss or detention of, or damage or injury to the goods, or the consequences thereof occasioned by any or several of the following causes : " Among the causes enumerated are : "Theft on land or afloat." "Barratry of master or mariners." "Interruption to navigation by ice." "Transhipments ; any act, neglect or default of the pilot, master, mariners, engineers, servants or agents of the company." The bill of lading was of two boxes of specie.

The court, at the trial, charged the jury that "theft by the purser was not barratry, and if lost by such means the defendant was liable." Also that "for the theft by the purser, if the gold was lost by his theft, the company was liable." Exceptions were taken to these rulings separately.

The sum of $5,000 was abstracted from one of the boxes during its transit to Maracaibo, and there was evidence tending to show that it had been abstracted by the purser during the voyage from New York to Curacoa.

There was nothing to show that the defendant was guilty of any fault in the employment of the purser. The only evidence on the subject was that he had been in the employ of the company two or three years, had come to it well recommended, and it had no fault to find with him and had heard nothing to his detriment.

The validity of the exemption clause in the bill of lading is not questioned, and the only questions discussed relate to its construction.

The first exemption is from loss "by theft on land or afloat." If the purser is to be regarded as comprehended within the term "mariners," there can be no doubt of the exemption of the defendant from liability under the clause which excepts losses by "barratry of master or mariners," for it is well established that the term "barratry" includes theft and embezzlement by the crew. (*Am. Ins. Co.* v. *Bryan*, 1 Hill, 25; S. C., 26 Wend., 563; 1 Phill. on Ins., 1071.) Assuming, however, for the moment, that the term "mariners" does not include the purser, and that he could not commit barratry, a proposition which will be considered further on, the question is presented whether a theft by him comes within the exception of loss by theft on land or afloat.

That the case falls within the literal terms of the exception is indisputable, but the courts are careful, in construing stipulations of this character, not to give effect to them according to their literal meaning, where it is apparent that such a construction would give them an operation beyond what could be presumed to have been within the contemplation of the parties. On this principle, when special perils are excepted, such as losses by fire, the exception is held not to cover the case of a fire caused by the negligence of the servants of the carrier, unless the intention to cover such a case affirmatively appears, the presumption being against the intention of the shipper to relieve the carrier from liability for such negligence, though it may result in one of the excepted losses. And in the present case, if the exception against losses by theft stood alone it could be well argued that it could not have been within the contemplation of the parties that the carrier should be exempted from liability for the fraud and dishonesty of its own employees. But when we find the exception coupled with another which expressly covers such fraud or dishonesty, and extends from the master in command of the ship, to the

humblest member of the crew, there is no room for such an
argument, and the intention is clearly expressed that the fact
that the person committing the theft is a servant or agent of
the carrier shall not preclude him from setting up the
exemption. Even if it should be established that the person
is not a mariner, and therefore the clause against barratry
does not apply to him, it would be a very strained construc-
tion to hold that the exemption clause is framed with the
intention of covertly saving the liability of the company for
theft by that particular officer, although it exempts from
liability for theft by the master and all the other officers and
the crew and passengers, and every person whomsoever. On
the contrary the broad and comprehensive language used
seems designed to protect the company against the conse-
quences of any wrongful act or neglect of its servants, includ-
ing barratry of the crew and theft committed by any person
afloat or on land. If the theft had been committed by a
passenger, or any person accidentally on board the vessel, there
can be no doubt of the appliability of the exception. If it
had been committed by a clerk or servant of the captain, I
can see no reason why the same result should not follow.
Why the purser, who performs clerical duties which would
in his absence devolve upon the captain or mate, should stand
on any different footing, I fail to see. The fact that confi-
dence is reposed in him by the owners cannot be urged with
any force as creating a distinction, for much greater confidence
is reposed in the captain and he is intrusted with much larger
powers as the representative of the owners, and yet even he
is covered by the stipulation. The shipper has ample means
of protecting himself by insurance against these excepted
perils, and it is apparent from the nature of the transaction
that the carrier, whose vessels are employed in the transpor-
tation of immense amounts of bullion and treasure, would be
entitled to a very different rate of compensation were he not
exempted from these risks. With this exemption his respon-
sibility is substantially confined to furnishing a sufficient ves-
sel and properly equipping it. This business of transporting

specie, when conducted under such special stipulations, is taken out of the general rules applicable to the ordinary business of a common carrier, and so long as the law sustains these agreements for a limited liability, and parties are induced to rely upon them, and conduct their business accordingly, the courts cannot justly refuse to enforce them.

The learned counsel for the respondent has referred to some English authorities in support of the position that the exception of loss by theft does not cover this case. The earliest case referred to (*De Rothschild* v. *Royal Mail S. S. Co.*, 7 Exch., 734) has very little bearing, as the exception in that case was of losses by pirates, robbers or dangers of the roads, and the point decided was that this exception did not cover a loss of treasure by a secret theft, since the word "robbers" meant, not thieves, but robbers by violence, and the dangers of the road meant dangers of marine roads, or if land roads, then such dangers as were immediately caused by roads. This decision was founded not only upon the distinction between the meaning of the words "thieves" and "robbers," but upon the argument that it would be very unreasonable to suppose that the shippers of a very precious article, in which a large value was comprised in a very small space, and which was capable of being easily abstracted by any person employed in carrying it, meant to exempt the carriers from responsibility for theft committed by their crews or others, but that it was likely that they should agree to exempt them when the goods were taken by a force which they could not resist. This argument was very forcible as applied to the bill of lading then under consideration, but is quite inapplicable to the present case, in which the bill of lading seems framed with the express view of meeting the points raised, for it not only provides against piracy, but expressly against theft, which term distinctly applies to a furtive taking, as contradistinguished from "*latrocinium*," or a taking by force, or piracy ; and the idea that a theft by any of the crew is not intended to be included, is clearly repelled by the provision against barratry.

The next case, and the one upon which the respondent mainly relies, is *Taylor* v. *Liverpool, etc., S. S. Co.* (L. R. [9 Q. B.], 546), a case of theft of diamonds, in which the exception in the bill of lading was substantially like that in the present case, and expressly exempted the carrier from a loss by thieves. The court held that this term did not include persons on board the ship. That as the theft was not shown to have been committed by any of the crew, the loss could not be claimed to have been caused by barratry, and as there were passengers on board by whom the theft might have been committed, and the exception would not cover such a theft, the carrier was liable. This result was reached by a course of reasoning, involving propositions which are not law in this State. It is based upon the assumption that the word "theft," when used in a policy of insurance, means "*latrocinium,*" being that which is accomplished by violence, and not "*furtum,*" which is simple theft. And upon that foundation the whole argument is built. LUSH, J., in delivering one of the opinions, after expressing great doubt upon the question, states it to be, whether the word "thieves" includes persons on board the ship, or whether it is to be limited, as in cases arising upon policies of insurance, to persons outside the ship and not belonging to it, and concludes that the same construction is to be applied to the word "thieves" when used in a bill of lading as would be in case of a policy of insurance. ARCHIBALD, J., who delivered the other opinion, after expressing the same doubts, states that the clause seems to have been copied from that contained in ordinary policies of insurance. That in such policies the word "thieves" has been held to refer to theft with violence; to "*latrocinium*" as opposed to "*furtum,*" and that without further explanation it must be taken to have the meaning which it has already acquired when used in ordinary policies of insurance, so that if the theft was by a passenger or some person from the shore, and not by any of the crew, it was not within any of the exceptions.

The same process of reasoning, based upon the settled

law of this State on the subject of policies of insurance, leads to precisely the opposite result. The forced and artificial interpretation which has been put upon the word "thieves" by elementary writers and which is recognized in the case last cited, has been decisively rejected, and shown to have crept into the books through a want of attention to the ground upon which, in earlier times, a loss by theft was not deemed covered by insurance, while a loss by piracy or robbery was. It is shown in the learned arguments and opinions in the cases of *Atlantic Ins. Co.* v. *Storrow* (5 Paige, 285); *American Ins. Co.* v. *Bryan* (1 Hill, 25); and especially in the same case in Error (26 Wend., 563), that the ancient forms of policies contained no insurance expressly against loss by thieves, and the question debated was whether the general clause which they contained, insuring against "all fortuitous occurrences," covered a loss by theft, and the conclusion reached was that "*latrocinium*," which means robbery or piracy, was a fortuitous occurrence, while *furtum*, or theft, against which it might be assumed that ordinary vigilance could guard, was not. From this the general and indiscriminate rule has been laid down in the elementary books which is relied upon in the case of *Taylor* v. *Liverpool, etc., S. S. Co.*, *supra*, as fixing the meaning of "thieves" or "loss by theft" in a policy of insurance, and, by analogy, in a bill of lading.

This doctrine was first assailed by Chancellor WALWORTH in the *Atlantic Ins. Co.* v. *Storrow* (5 Paige, 285), where he held that under an insurance against loss by thieves the insurer was liable for goods lost by simple larceny, without violence, committed by persons not connected with the ship, leaving open the question whether the insurer was liable for loss by simple larceny committed by persons belonging to the ship. But in the later case of *American Ins. Co.* v. *Bryan* (1 Hill, 25), where the insurance was against loss by "*thieves, barratry of the master and mariners*," etc., and it was shown that the property was stolen either from the ship or boats, but by whom the theft was committed did not appear ; the court charged the jury that

a loss by theft, whether by assailing thieves, or by the embezzlement of the crew or by *whatever persons*, was covered, and this charge was sustained by the Supreme Court in an elaborate opinion by COWEN, J., and this decision was affirmed by the Court of Errors in 26 Wend., 563, after an exhaustive examination and discussion. The case of *Simmons* v. *Law* (3 Keyes, 217), is not an authority on the point. It does not appear that in that case there was any exception of loss by barratry, and the charge as to theft was not excepted to.

Taking therefore, as was done in the case of *Taylor* v. *Liverpool, etc., Co.*, the interpretation put upon a precisely similar clause in a policy of insurance as our guide, if one were needed where the language is so plain, the loss in question was clearly one by theft, within the clause in the bill of lading, unless the purser was a mariner ; in that case it falls within the exception of loss by barratry.

I am of the opinion that the purser does fall within the term "mariner," as used in this bill of lading, and that embezzlement by him was barratry. He was permanently attached to the ship as one of its officers, and performed duties which would otherwise devolve upon the master. He lived on board the ship, and had no other residence, and had been thus employed by the defendant for several years. He was one of the ship's company, and it is very difficult to conceive that when the ship owner stipulated for exemption from liability for the dishonesty of all the officers and crew of the vessel, including the master, it could have been intended to exclude this single member of the ship's company. No authority is cited in support of such exclusion. The authorities cited by the respondent are to the effect that barratry can be committed only by master and mariners, a point which is not disputed, but there is no authority showing that a purser of a ship is not included in the term mariner, while several authorities are cited by the appellant in support of the proposition that he comes within that description. In re *goods of Hayes* (2 Curties Ec., 338), it was

held that the purser of a man-of-war was a mariner, within the statute relating to nuncupative wills. It is not necessary, to bring a purser within the definition of mariner, that he should be engaged in navigating the ship, provided his employment is on the sea, and he is attached to a ship. The duties of the purser are marine duties. He is subordinate to the captain, and performs duties which would otherwise have to be performed by him, and in earlier times were so performed. (McLachlan on Shipping, 146, 148 ; *The Gratitudine*, 3 C. Rob., 240, 257.) The cook and steward have been held to be mariners, and entitled to sue as such. (*The Jane and Matilda*, 1 Hagg. Adm., 187, 190 ; *Smith* v. *Sloop Gilpin*, Gilpin, 505.) So of porters permanently employed on passenger vessels ; also all subordinate employees, engineers, clerks, stewards, cooks, etc., when necessary to the service of the ship. (Bouvier's Law Dic.) " Mariner," and the word barratry includes every species of fraud committed by any one standing in the place of master or mariner. (*Boehm* v. *Combe*, 2 Maule & Selwyn, 172.) By United States Revised Statutes, section 4573, the master of every foreign bound vessel is required to give the collector a list of all the persons composing the ship's company, and by section 4612 it is provided that every person (except apprentices) who shall be employed or engaged to serve in any capacity on board the ship shall be deemed to be a seaman. The same definition is made in the English statute (7 and 8 Vict. C., 112, § 2), " any seaman, that is, any person engaged to serve in any capacity on board his ship (apprentices excepted)." I can see no room to doubt that a purser permanently attached to the ship comes within the description of seaman or mariner, as defined and understood at the time this bill of lading was issued, and I find no foundation for holding that a theft by him is not barratry.

The general provision exempting the company from the consequences of any act, neglect or default of the pilot, master, mariners, engineers, servants or agents of the company, evinces an intention to make the exemption as broad

as language can express, and to preclude all nice distinctions as to the capacity in which the person through whose fault the loss occurs is serving, and, in connection with the other clauses, to render immaterial the inquiry whether the loss occurred from mere neglect or intentional wrong.

The judgment should be reversed and a new trial ordered, costs to abide the event.

ANDREWS, MILLER and EARL, JJ., concur; CHURCH, Ch. J., concurs on the ground that the case was within the exemption against barratry; DANFORTH, J., dissents; FOLGER, J., absent at argument.

Judgment reversed.