*Municipal Court of the City Boston*

No. 191300

## GIBBS OIL COMPANY

v.

## COLLENTRO & COLLENTRO, INC., d/b/a, et al

Argued: June 21, 1968 Decided: October 3, 1968

*Present*: Adlow, C. J., Lewiton, Shamon, J.J. Case tried to *Foster, J.*

*Lewiton, J.* The matter here under review is a claim asserted by the plaintiff, Gibbs Oil Company ("Gibbs"), against one of the dedendants, Irving Atkin ("Atkin") based upon the latter's endorsement of a promissory note payable to the plaintiff. It appears from the report by the trial judge that the plaintiff had furnished fuel oil to the corporate defendant, Collentro & Collentro, Inc. ("Collentro"). On June 1, 1967, Collentro executed and delivered to the plaintiff, in payment of fuel oil sold and delivered to Collentro, a promissory note to the order of Gibbs for $2,600, due and payable in 60 days. The note, on which this action is brought, was endorsed by Atkin as follows: "Waiving presentment and notice and any and all surety defenses. This is a sealed instrument."

At the trial, Atkin testified that he had endorsed the note at the request of one Archie Gould, General Manager of Gibbs, so that the note could be discounted with a bank. The report does not indicate that there was any evidence to the contrary.

At the conclusion of the case, the trial judge denied the following request for ruling submitted by the plaintiff:

"No consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent

obligation of any kind. G.L. c. 106, § 3-408.'' The court then found for the defendant after making the following specific findings of fact:

''I find as a fact that: The defendant Atkins [sic] was an accommodation endorser and was accommodating the plaintiff at the plaintiff's request in order for plaintiff to discount the note. There was no consideration to Atkins [sic] for such accommodation and he is not liable to the plaintiff who was not a holder in due course.''

The case is here on the plaintiff's claim that it was aggrieved by the denial of the requested ruling quoted above. There was no reversible error.

There is no occasion for us to consider whether, as an abstract matter, the ruling requested by the plaintiff was a correct statement of law. Even if the requested ruling had been granted, the finding as to the accommodation endorsement would preclude recovery by Gibbs.

The testimony of Atkin clearly warranted the finding by the trial judge that Atkin ''was accommodating the plaintiff at the plaintiff's request in order for plaintiff to discount the note.'' This finding of fact, supported by the evidence, cannot now be challenged. *Kelsey* v. *Hampton Court Hotel Co.*, 327 Mass. 150, 152. *James B. Rendle Co.* v. *Conley & Daggett, Inc.*, 313 Mass. 712. *Casey* v. *Gallagher*, 327 Mass. 746, 748-9, 750.

The Uniform Commercial Code, (Mass. G.L. c. 106) in § 3-415 (1) defines an accommodating

party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." Sub-section 5 of the same section goes on to provide that "An accommodation party is not liable to the party accommodated...." Granted the finding that Atkin was an accommodation endorser, and that he endorsed the note to the plaintiff at the latter's request, it necessarily follows that he is not liable to the plaintiff on his endorsement. *Great Barrington Savings Bank* v. *Day,* 288 Mass. 181, 184. *Connors Bros. Co.* v. *Sullivan,* 220 Mass. 600, 605. *Goodman* v. *Gaull,* 244 Mass. 528, 530. See *Beacon Trust Co.* v. *Barry,* 260 Mass. 449, 451.

The plaintiff has strenuously argued that the case of *Rose* v. *Homsey,* 347 Mass 259, requires an opposite result. It relies on the statement in that case to the effect that "an accommodation party is always a surety" under the Uniform Commercial Code. From this, Gibbs argues that since the maker, Collentro, did not make payment on its note, Atkin is in the position of a surety, and is liable to Gibbs. In our opinion, this argument misses the meaning of the *Rose* case. There, the Supreme Judicial Court was discussing the relationship of an accommodation maker to a third party and whether the accommodation maker was primarily liable to the third party or was liable as a surety. No question of the rights of an accommodated party as against its accom-

modating endorser was there involved. Nor do we believe that it could have been the intent of the drafters of the Uniform Commercial Code, or of the legislature in enacting the Code, to reverse the existing rule of non-liability of an accommodating party to the party being accommodated. **Report dismissed.**

Shamon, J. *Dissenting:*

I regret that I cannot join in the majority opinion in this case, for to do so, I would have to take impermissible liberties with the vast power the judiciary possesses in deciding controversies. In upholding the finding of the trial court, the majority has done just that.

Judges, by their very position as arbiters of contested litigation, have the power to ignore traditional and time tested principles of law, but it is axiomatic that they do not have that right. Appellate judges must not only instruct themselves concernedly when reviewing appeals, in order to apply correct principles of law to the controversy before them, but they are obliged to do so. In order to do justice in achieving what the law requires of them, judges must give due weight and consideration to the opinions of their colleagues. Failing to do this, justices may be fairly charged with abrogating to themselves an assumption of invincible rectitude in their decisions, a characteristic with which finite man is not endowed. It is axiomatic that omniscience is not an attribute of humankind, but sad to relate, many judges cannot perceive this absolute concept of creation.

The majority opinion in this case ignores reasonable inferences fairly to be drawn from a calm and judicial consideration of the facts and has relegated them to a judicial limbo. These inferences cry out for recognition and application in a case yearning for a justiciable solution. *Fiat justicia, ruat coelum.* In the interests of judicial restraint, the minority will not flaunt its power nor flout its duty, but will do what it ought to do, not what it has the power to do.

Construing the report in this case and all the reasonable inferences to be drawn therefrom, a calm judicial determination of it, divorced from expediency, requires the conclusion that the individual defendant, Irving Atkin, through his company, the corporate defendant, Collentro & Collentro, Inc., d/b/a Holcyon Laundry, did business with the plaintiff, Gibbs Oil Co.; that it owed the plaintiff the sum of $2,600 for oil purchases; that on the first day of June, 1967, it owed this debt and that to secure more time to pay it, the defendant, Irving Atkin, did execute a promissory note payable to the said Gibbs Oil Co. for $2,600, payable in sixty days; that as consideration for the extension of time for the payment of said note, the defendant Irving Atkin, endorsed the note on the reverse side thereof in the following manner: "Waiving presentation and notice and any and all surety defenses. This is a sealed instrument."

It is submitted that as the maker of this

note, Irving Atkin, has made himself liable individually, for his signature does not indicate he is acting for any corporation as agent or as an officer. The mere fact that the words Holcyon Laundry appear above his name is of no legal significance. These words are mere surplussage and may be likened to a situation where a person might sign his name to a note and affix the word trustee after his name, or below it. The word trustee does not exonerate him from liability personally. Likewise, Irving Atkin, signing his name as the maker of the note with the words Holcyon Laundry, is not limiting his liability in any way. From the facts in this case, he signed this note in consideration of a sixty day extension of a claim for $2,600 due the plaintiff from Collentro & Collentro Co., Inc., for which corporation, he was interested in securing further time to pay a due and payable debt of $2,600 for oil purchases.

The note clearly expressed that "value received" was the consideration and it is clear upon analysis of the facts in this case, that the value received was the sixty day extension of a claim for $2,600 which all parties agree was due and payable to the plaintiff. The finding is repugnant to the note and cannot prevail.

Both the trial judge and the appellate majority have completely missed considering this element of the case, which consideration, if properly applied, would make Irving Atkin liable as the maker.

However, both the trial court and the majority have chosen to consider this case on the basis of Irving Atkin's liability as "endorser" only. In this context, it is my opinion that they are in error in failing to consider the liability of Atkin as a maker as well as an endorser.

Even though the report is sketchy, the conclusion is inescapable that Irving Atkin, sought for his corporate defendant, Collentro & Collentro, Inc., d/b/a Holcyon Laundry Co., a continuance of the business relationship existing on June 1, 1967 with the plaintiff, Gibbs Oil Co. The integration in a written note of the claim for $2,600 due and payable by corporate defendant to the plaintiff on June 1, 1967 and extending it for sixty days was for the accommodation of Atkin and the corporate defendant in which he was interested. If the trial court and the majority were interested in consideration in this case, the extension for sixty days of the $2,600 claim is ample consideration to make the defendant Atkin liable upon his endorsement.

The trial judge has found as a fact "that defendant Atkin was an accommodation endorser and was accommodating the plaintiff at the plaintiff's request in order for the plaintiff to discount the note. There is no consideration to Atkin for such accommodation and he is not liable to the plaintiff who was not a holder in due course."

In my opinion, the finding of the trial judge

"that there was no consideration to Atkin" is plainly wrong. For here we have an individual defendant, Atkin, whose company owed $2,600 to the plaintiff, which sum was due and payable, for oil sold to the corporate defendant, which claim was extended for sixty days, and Atkin participated in securing this extension and solicited it by his guaranty of payment.

Can we say by any stretch of the imagination that the defendant Atkin is a stranger to this transaction. If we cannot, as is reasonably to be inferred from the report, then if the extension of the claim for 60 days is not consideration for the accommodation of Atkin, then the majority has heard the argument of the plaintiff with deaf ears. Not even by the most vivid imagination can Atkin be pictured as a stranger to this transaction, who has gained nothing by the extension of the $2,600 claim for sixty days. Atkin was the catalyst in consummating the whole transaction being the maker of the note as well as the endorser.

The duty of the appellate tribunal is to apply the law to all issues presented by the report and to draw all reasonable inferences therefrom. In failing to construe the report in this manner, the majority has compounded the error of the trial judge. It has failed, not only in not finding actual consideration moving to Atkin, but also ignored or failed to apply the time tested and traditionally deep-rooted legal principles of estoppel and our law con-

cerning the significance of sealed instruments to this whole case. The action of the majority is tantamount to enshrining with a halo, the fallacious judicial expedient, **"Quod judicibus placuit, vigorem legis habet."**

The dealings with Atkin in the instant case were conducted at arm's length; he was a business man who was desirous of seeking an advantage for his company, Collentro & Collentro, Inc.: He signed the note and then endorsed it on the reverse side, guaranteeing payment; he knew the contents of this note and was fully cognizant of its implications and now to permit him to resort to the flimsy subterfuge of saying that he endorsed it to accomodate the plaintiff, in the face of powerful inferences to the contrary is not only sheer hypocrisy on his part, but also it is incredible that the majority has succumbed to this artifice and permits him to escape a just liability. The majority likewise, irrespective of the question of consideration is legislating judicially that the principles of estoppel and our concepts regarding the sealed instruments are no longer of any consequence. If ever the principles of estoppel were applicable, this case is a perfect example in which to apply estoppel. In my opinion, the majority has compounded the error of the trial court in this respect.

It is interesting to note that the majority opinion contains a statement on the second page to the effect that the finding of fact **"supported**

by the evidence" cannot now be challenged. It might be asked—what evidence is there to support the finding of fact? A calm and judicial consideration of the facts in the report and the plethora of inferences to be drawn therefrom lead to a most powerful conclusion that all such inferences must be resolved in favor of the plaintiff. The finding of fact is untenable and all the inferences to be drawn from the acts of the parties do not bear out the finding of fact.

Since both the trial judge and the majority opinion concur in finding no actual consideration moving to Atkin, it might be asked pertinently, what is the effect of the recital that "This is a sealed instrument" above the defendant Atkin's endorsement.

In the case of *Chem-Lac Products, Inc.* v. *Gerome*, 327 Mass. 394, where the defence was lack of consideration raised by the guarantor, the Supreme Judicial Court ruled, "consideration was of no consequence, since the guaranty was under seal".

In the case of *Lorel* v. *Boisjoil*, 330 Mass. 513, the court disposed of the defence of no consideration by holding that the seal imports consideration.

In the case of *Morad* v. *Silva*, 331 Mass. 94, the court held that the lack of consideration is no defence to a sealed instrument.

By statute G.L. c. 4, § 9A, a recital in an instrument that it is a sealed instrument (as the

note in the instant case contained just above the defendant Atkin's endorsement) is sufficient to constitute it as a sealed instrument and no actual consideration need be posed. *Lawrence H. Oppenheim Co.* v. *Bloom,* 325 Mass. 301.

In my opinion a very important consideration overlooked or ignored by the trial court and the majority is the application of estoppel to the acts of Atkin in order to prevent him from avoiding a just liability on his endorsement. It is elementary that in considering whether estoppel is applicable, it is important to determine where the equities stand. If estoppel is based upon the principle that when one of two persons is to suffer, the sufferer should be the one whose act caused the other to change his position. In the instant case, Atkin procured the extension of the $2,600 due the plaintiff from a debt due and payable on June 1, 1967 to be extended for sixty days by reason of the endorsement by him guaranteeing the payment at the end of the extended period expressly **waiving all defences.** Here is a stock case of estoppel which is present and the estoppel against Atkin arises.

To show estoppel, the plaintiff has the burden of proving that the defendant Atkin, by acts or words, prevented the plaintiff from acting to collect the $2,600 debt due and payable on June 1, 1967 by his endorsement in consideration of an extension of sixty days.

The meaning of estoppel is clearly expressed in *Baker* v. *Seavey,* 163 Mass. 527, as follows:

> "If a man by his words or conduct wilfully endeavors another to believe in a certain state of things which the first knows to be false, or if the second believes in such a state of things, and acts upon his belief, he who knowingly made the false statement is estopped from averring afterwards that such a state of things did not in fact exist."

Under the decision of *York* v. *Taylor,* 332 Mass. 368, the representation need not be false but only a material one causing the other to act. This rule has been recognized and acted on in this Commonwealth in the following cases:

*Plumer* v. *Lord,* 9 Allen 455.

*Langton* v. *Bond,* 10 Allen 433.

*Turner* v. *Coffin,* 12 Allen 401.

*Moore* v. *Spiegel,* 143 Mass. 413.

*Short* v. *Currier,* 150 Mass. 373.

In *McLearn* v. *Hill,* 276, Mass. 519, it is stated that:

> "In order to work an estoppel, it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow".

In this case, the Supreme Judicial Court sus-

tained exceptions to the refusal of the trial judge to permit facts to be introduced showing conduct from which a jury might infer an estoppel. See also:

*Knight* v. *Lawrence,* 331 Mass. 293.

*Hayes* v. *Gessner,* 315 Mass. 366.

*MacKean* v. *Kasinaskas,* 333 Mass. 695, 697.

*Swift* v. *American Universal Ins. Co.* 349 Mass. 637.

The majority has completely overlooked and neglected to review this case as justice demands, when it is silent in determining the significance of the defendant Atkin's acts in the instant case.

As to the reliance of the majority as well as the trial judge upon the provisions of the Uniform Commercial Code (Mass. Gen. Laws, c. 106) particularly sub-section 5, in which it is stated that "an accomodation party is not liable to the party accommodated", is not helpful to the defendant Atkin, for it applies only to a gratuitous endorser. Moreover, this quoted section of the code cannot be construed as abolishing the well entrenched doctrine of estoppel and our Massachusetts decisions regarding sealed instruments.

The majority as well as the trial judge both ignore and avoid dealing with § 3-408 of the Code which reads "no consideration is necessary for an instrument or obligation thereon given in payment of or security for an antecedent obligation of any kind", but both choose expediently to rely on sub-section 5 which reads,

"an accommodation party is not liable to the party accommodated—". In this respect the majority assumes what has not been proved.

As to the effect of the Uniform Commercial Code (G.L. c. 106) on the principles of law ennumerated herein, such as a sealed instrument and estoppel, there is no legislative enactment or decision in this Commonwealth limiting or affecting our well grounded notions with respect to such principles of law.

In this respect, the majority to sustain the trial judge, seeks to lift itself up by its own bootstraps when it repeats the error of the trial court that "Atkin was an accommodation endorser". By so doing, it likens the act of Atkin to a case in which A goes to B and secures B's endorsement to a note in order for A to negotiate the note and failing to do so, A sues B on his endorsement.

This is the type case that sub-section 5 of Chapter 106—Uniform Commercial Code, refers to, and in this respect, both the trial court and the majority have interpreted the meaning of this section of the code incorrectly when they apply its provisions to the transaction in the instant case.

The instant case is readily distinguishable, for here Atkin is not a stranger or a gratuitous endorser but a business man who has secured a benefit for his corporation viz., the extension of a $2,600 liability for sixty days. To call Atkin an accommodation endorser for the plain-

tiff under such circumstances is to ignore the facts in this case entirely and to ignore the fundamental principles of law enumerated in detail *supra*. This broad brush leaves the whitewash too thin.

**I would vacate the finding of the trial court and enter a finding for the plaintiff on its declaration.**

BEN G. GILBERT and GARY T. GILBERT,
    both of Boston, for the Plaintiff
MORRIS KARLL of Boston
    for the Defendant