**Garcia International Corporation, Plaintiff-Appellant, v. Cosmos Shipping Co., Inc., et al., Defendants-Appellees.**

**Gen. No. 53,670.**

First District, First Division.

September 18, 1970.

Rothschild, Stevens, Barry & Myers, of Chicago, for appellant.

John M. Bowlus and Sheli Z. Rosenberg, of Chicago (Cotton, Watt, Jones, King & Bowlus, of counsel), for appellee.

MR. JUSTICE SMITH delivered the opinion of this court.

This suit arises out of the loss sustained by the plaintiff when nineteen cases of spark plugs became lost,

strayed or stolen in Manila in the Philippine Islands. Plaintiff sued its own ocean freight forwarder (Cosmos), the ocean carrier (Orient), and the agent of the ocean carrier (Midland) for the damages. In a bench trial, the trial court entered judgment for all defendants. There is no appeal from the judgment in favor of Orient or Midland and their liability is at rest. Plaintiff insists that the judgment in favor of Cosmos is in error because Cosmos had a duty to insure this cargo, failed in that duty and as a consequence the damage to this plaintiff was sustained. We affirm the judgment of the trial court.

In the fall of 1962, the plaintiff purchased the spark plugs from an Ohio supplier for the purpose of resale to a customer or customers in Manila. Plaintiff paid $9,-627.72 for the spark plugs. The resale to plaintiff's Manila customer was to be financed through the medium of letters of credit. Arrangements for shipment of the goods from Chicago to Manila were made by the defendant-Cosmos with the carrier-Orient through its agent-Midland. Letters of credit to the original customer of the plaintiff expired. Plaintiff ordered the shipment held. The spark plugs were nevertheless delivered to the pier in Chicago and in error loaded on board the Orient. To remove them involved moving several tons of cargo and Orient was unwilling to do this without pay. The ultimate outcome of all of this was an agreement among the parties that if letters of credit could not be reestablished in Manila, Orient would return the shipment to Chicago at plaintiff's request and without expense. There was no such request. Instead, plaintiff devoted its energies to obtaining different customers in Manila and its president spent some time in the Islands for that purpose. When the goods reached Manila, they were discharged to the customs officials of the Philippines on about the 3rd day of February, 1963. At that time, a formal original negotiable bill of lading was issued to Garcia at its request. At this point, the plain-

tiff was put into the documentary possession of the goods through its possession of the negotiable bill of lading which it had requested and received and, as we shall see, was insured.

It appears that the plaintiff received what it had bargained for from Cosmos so far as the original transportation of the goods was concerned when the goods were discharged to customs in the Philippines and the plaintiff was supplied with documentary possession of the goods through its possession of the negotiable bill of lading which it had requested and received. As abstracted, plaintiff's president testified as to the original undertaking of Cosmos.

> "On the instructions to Cosmos, the words 'as per Letter of Credit' followed after the printed word 'Insurance.' The Letters of Credit referred simply to a cost and freight and did not require insurance. Prior to the shipment of the goods, this was a straight cost and freight contract, and if the goods were going to be insured at that point, it would have been the obligation of the buyer in Manila. Insofar as the relationship between Garcia International and Cosmos is concerned, 'Cosmos did not have a duty prior to shipment to insure this cargo.' Prior to shipment, there was no agreement between Garcia International and Cosmos with respect to insurance other than as contained on the shipping instructions. In the latter part of 1962, in a conversation with Mr. Jensen of Cosmos Insurance Company, Mr. Jensen told me that if letters of credit could not be obtained, the steamship company had agreed to return the goods to the United States free of charge."

This testimony of Mr. Garcia as abstracted is borne out by the documentary evidence in the record. The record is likewise clear that there are apparently two types of

contracts. One is termed "C&F Contract" which means "cost and freight"—the second is termed "CIF Contract" which means "cost, insurance and freight." The record shows that the original contract here isused was a C&F contract and no obligation for insurance arose under it.

In January, 1963, while the spark plugs were enroute to Manila, plaintiff obtained a new buyer. This was a CIF transaction and on January 25, 1963, a standard marine insurance policy was effected by Cosmos covering the shipment. Plaintiff's president so testified and the policy so shows. The contract between the plaintiff and Cosmos stated: "6. Instructions 'to insure against all risks' will be construed to mean to insure against ordinary marine risks only, subject to the conditions of the insurance policy under which such insurance is effected. If insurance against any other risks, such as theft, pilferage, leakage, breakage, fresh water damages, ship's sweat, rust, nondelivery, contact with other cargo, or against any other risk or loss is desired by the Sender, then special written instructions must be received by the Company in sufficient time prior to forwarding to effect the same." There was no written request for these other risks. The policy effected on January 25, 1963, complied with the first proviso and there appear to be no other further or additional written instructions from the plaintiff to Cosmos. Accordingly, Cosmos had at this point complied with its contractual obligations to Garcia for this insurance was in full force and effect on the date the goods were delivered in Manila and for fifteen days thereafter. Again, letters of credit went awry and the goods were not picked up at customs. At this time, plaintiff was in full possession of the goods through the bill of lading and as late as May, 1963, the goods were in the custody of the customs officials of the Philippines. Up to this point, the goods were safe and Cosmos had fully complied with its instructions. Its obligations to the plaintiff up to this point had been fully performed. It

143

is thus clear that any loss from nondelivery of the goods as of May, 1963, was due to the failure of letters of credit and not the failure of anyone to insure.

■   We have some difficulty in molding out of subsequent events either a promise or a duty either express or implied for Comos to insure. We have previously noted the terms and conditions upon which Cosmos accepted this shipment so far as an instruction "to insure against all risks" is concerned. Paragraph five of these terms and conditions likewise provided "If for any reason the goods are held in warehouse, or elsewhere, the same will not be covered by any insurance, unless the Company receives written instructions from the Sender in which event the Company will use reasonable efforts to effect the insurance desired, at Sender's expense." We have been unable to find in this record any such written request. It is, of course, true that the record shows that Cosmos contacted its insurance carrier to see whether or not the policy could be extended. Since this request was made after the expiration of policy, a survey was required. The survey was requested and it was unsatisfactory for the very simple reason that the survey organization was not able to locate the spark plugs. It appears, likewise, in the record from a letter dated in November, 1963, that spark plugs similar to these were being sold locally and the plaintiff was advised of that fact. The record likewise shows that Cosmos filed a claim against the ocean carrier and its agent and that the claim was denied. The policy which it sought to extend granted protection against "assailing thieves." Had it been extended, therefore, it is doubtful that it would have supplied any protection to the plaintiff as it has been held that the term "assailing thieves" does not include the loss of property from a simple theft in the absence of some accompanying violence or force. 44 Am Jur2d, § 1371; Swift v. American Universal Ins. Co., 349 Mass 637, 212 NE2d 448, 19 ALR3d 1145.

■ In the face of the specific written terms and conditions under which Cosmos accepted this shipment, it is difficult to find a duty specifically requiring insurance coverage for the loss here shown. Actually, there is nothing in this record to specifically indicate what happened to the spark plugs, where they are, or whether any policy obtainable by Cosmos would have covered the nature of the loss incurred. We have previously pointed out in this opinion that when the goods were delivered in Manila and the bill of lading was issued to Garcia, the goods then belonged to the plaintiff. It was then its obligation to protect its own property. Its written contract with Cosmos did not require the latter to carry insurance that would have covered the specific loss here in a warehouse. It made no written request that Cosmos obtain such a policy. There is no showing that such a policy would have been obtainable without a survey. Plaintiff relies either on a wrongful shipping of the goods or a wrongful failure to extend the policy. There is nothing in this record that shows that the proximate cause of the damage to the plaintiff was the wrongful shipping to Manila. Indeed, it was Orient who inadvertently shipped the goods after notice not to do so. The inability of Cosmos to carry out its obligation resulted not from the wrongful shipping, but from the inability of the plaintiff's purchasers to maintain letters of credit. Likewise, this record fails to show a duty on the part of Cosmos to obtain all coverage insurance. There is testimony that plaintiff orally requested that Cosmos "fully protect" the shipment and general assurances by Cosmos "not to worry," as it was the responsibility of the carrier. There was no written request for it. The testimony shows no promise, express or implied, on the part of Cosmos. Such being true, the damage must rest where it properly belongs. The plaintiff neither requested the return of the goods by Orient, as it might well have done, nor did it request in writing total insurance cov-

145

erage against risks while the goods were in the warehouse. The loss if any, therefore, was the failure on the part of the plaintiff to protect its own property. The judgment of the trial court is supported by an excellent memorandum opinion as well as the record in this case. It is affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.