Stephen H. Swift *vs.* American Universal Insurance Company.

Suffolk.    October 5, 1965. — December 2, 1965.

Present: Spalding, Whittemore, Cutter, Kirk, & Reardon, JJ.

*Insurance,* Marine insurance, Limitation of time for suit, Estoppel of insurer.  *Estoppel.  Practice, Civil,* Stipulation, Damages.  *Interest. Words,* "Assailing thieves."

A finding that there was a loss through "assailing thieves" within a policy of insurance upon a yacht was warranted on evidence that while the insured owner and his crew were ashore entrance to a locked cabin on the yacht was gained by force and personal property was taken therefrom.  [640–641]

In an action on an insurance policy, a finding that the insurer was estopped to assert as a defence a provision of the policy requiring the action to be commenced within one year after the loss was warranted on evidence that some two weeks before the expiration of such year an adjuster authorized to act for the insurer, upon receiving certain detailed information concerning the loss from the insured, stated that the claim was adjusted and that payment would be made when the information was received in typewritten form, that the information in that form was promptly furnished to the adjuster but that payment was not made, and that the insured relied on the adjuster's statement in not bringing the action within the year.   [641–642]

A stipulation in an action on an insurance policy, that if there was a finding for the plaintiff "it should be in" a stated amount, was, in the circumstances, merely an agreement as to the amount of the loss and did not preclude, in a finding for the plaintiff, the addition to such amount of interest thereon from the date of the loss.   [642]

CONTRACT.   Writ in the Municipal Court of the City of Boston dated November 15, 1960.

The action was heard by *Shamon, J.*

*Louis K. Nathanson* for the defendant.

*Lawrence E. Cooke (Alvin S. Hochberg* with him) for the plaintiff.

KIRK, J.   This is an action of contract based upon an insurance policy covering a yacht owned by the plaintiff. The judge found for the plaintiff "in the sum of $2,600.00 with interest from May 28, 1959," the date of the alleged loss.   The Appellate Division dismissed the report.

The policy, which was issued to the plaintiff on December 12, 1958, provided in pertinent part, "This insurance . . . is . . . with respect to . . . Perils . . . of the seas . . . , fire, lightning, earthquake, assailing thieves, theft of the entire Yacht, jettisons, barratry of the Master and Mariners, and of all other like perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of said yacht or any part thereof."   It also provided that "No . . . action on this policy . . . shall be sustainable . . . unless commenced within twelve . . . months next after the happening of the loss."

The questions presented are whether the judge was in error in (1) denying the request that the evidence does not warrant a finding for the plaintiff, (2) misapplying to the

evidence a request which was granted, namely, that ''The burden of proof is on the plaintiff to prove that the damage he claims to have suffered comes within the coverage of the policy,'' and in (3) denying, as inapplicable to the facts found, the request that, as matter of law, there must be a finding for the defendant since the action was commenced more than one year after the happening of the loss.

The judge's report shows that there was evidence tending to prove the following: On the night of May 28, 1959, the plaintiff's yacht was tied up at a pier in Neponset. Before the plaintiff and his crew of two went ashore the two cabins of the yacht were securely locked and a plywood patch was installed in a window undergoing repair in one of the cabins. Upon his return on the morning of May 29, 1959, the plaintiff found that the plywood patch had been forced open and demolished, the door of one of the cabins had been forced open, and personal property, valued at $3,600, was missing. On the same day he reported the matter to the harbor police and the insurance broker through whom the policy was procured. The broker was named in the policy as the authorized representative of the defendant. The broker wrote to the defendant. The defendant authorized the broker to refer the matter to a firm of adjusters whose representative, one Smith, within a few days of the loss went aboard the yacht, inspected the cabin, and made a list of the missing property. The broker notified the plaintiff to take up the matter of his loss with Smith. Months passed without action, mainly due to the plaintiff's hospitalization for surgery. A questionnaire from the adjusters then was received and answered by the plaintiff. On May 11, 1960, two weeks before the expiration of the limitation period in the policy, the plaintiff and his attorney visited Smith at the adjusting firm's office, presented the answered questionnaire, reminded Smith of the impending expiration date and told Smith that suit was about to be started against the defendant. Smith replied that the matter was now adjusted and that payment would be made when the questionnaire was received in typewritten form.

The typed answers on the questionnaire were mailed to Smith on May 12, 1960. At no time did the defendant, the broker, or the adjusters deny liability on the policy. Payment, nevertheless, was not made.

The judge found that the broker, with the authority of the defendant, referred the plaintiff's claim to Smith for adjustment, and that the plaintiff thereafter gave all detailed information in writing to Smith who had taken over the matter for adjustment and settlement. The judge concluded that the defendant was estopped to assert the limitation period as a defence to the action. He found that the action was not commenced before the year expired because of the plaintiff's justifiable reliance upon Smith's statements that the claim had been established, that he considered it settled, and that payment would be made upon receipt of the typed answers to the questionnaire. The answers, the judge found, were sent to Smith. No contention was made that they were not received.

There was no error in denying the first request or in applying the granted second request. The defendant contends that the plaintiff failed to sustain the burden of proving that the loss was within the terms of the policy. Specifically, it argues that it has not been shown to have been caused by "assailing thieves." It appears that, in times long past, marine insurance policies covered losses at the hands of "Pirates, Rovers [and] Thieves." Beawes, Lex Mercatoria Rediviva, 245 (1754). Jacob, Law-Dictionary, Vol. II, Insurance, I, 1 (1797). The word "thieves" in marine insurance was held to apply to persons, not connected with the insured vessel, who committed thefts by force or violence in *Marshall* v. *Nashville Marine & Fire Ins. Co.* 20 Tenn. 99, 101 (1839). At approximately the same time, however, in New York, the meaning of "thieves" in marine insurance was held to include secret and nonviolent larceny even though committed by persons employed or working on the vessel. *Atlantic Ins. Co.* v. *Storrow,* 5 Paige, 285, 293 (N. Y. Ch., 1835). *American Ins. Co.* v. *Bryan,* 26 Wendell 563, 573–574 (N. Y. Ct. Error, 1841).

In order to avoid the consequences of the construction given to the word "thieves" in the New York cases, marine insurers inserted the word "assailing" to modify the noun "thieves." 10 British Shipping Laws (Arnould, Marine Insurance [15th ed.]), par. 834. The term "assailing thieves" has been interpreted to include robbery by force and violence. *Paddock* v. *Commercial Ins. Co.* 2 Allen, 93, 101. *Cleveland Twist Drill Co. (Great Britain), Ltd.* v. *Union Ins. Soc.* 23 Lloyd, L. R. 50, 53 (C. A.). See *Feinberg* v. *Insurance Co. of No. America,* 161 F. Supp. 686 (D. Mass.), revd. on other grounds, 260 F. 2d 523 (1st Cir.). In our view the element of force or violence implicit in the phrase "assailing thieves" is not limited to violence against the person, as in robbery, but also includes force applied to the ship or to the insured goods in the perpetration of the theft. This construction was applied by the King's Bench to facts analogous to those in the instant case. See *La Fabrique de Produits Chimiques Société Anonyme* v. *Large,* [1923] 1 K. B. 203, 208.

We think that the judge properly construed the policy and correctly applied the evidence to it. On the evidence, he was warranted in finding that there was a theft or larceny, as the term is commonly understood, that is, "the taking and carrying away of the personal property of another with the intent unlawfully to deprive that other permanently of the use of it." *Rich* v. *United Mut. Fire Ins. Co.* 328 Mass. 133, 134, and cases cited. He was warranted in finding that the theft took place aboard the craft and was accomplished by the use of force to gain entrance to the cabin from which the plaintiff's property was stolen. The perpetrators of the wrong thus could be found to be "assailing thieves." What we have said makes it unnecessary for us to discuss, as a basis for liability, the clause encompassing "all other like perils," quoted above from the policy.

There was no error in denying the third request as being inapplicable to the facts found by the judge. There was evidence of correspondence and testimony of communica-

tions among the plaintiff, the broker, the defendant, the adjusting firm, and Smith. The judge was entitled to give weight to this evidence, which, if believed, as it doubtless was, brought the case within the principle of estoppel as discussed in *MacKeen* v. *Kasinskas,* 333 Mass. 695, and cases cited.

We comment briefly on the argument, not made in the prior proceedings, that the judge was in error in allowing interest on the $2,600. The judge's report states, ''At the outset of the trial it was stipulated by the parties that if the Court should find for the plaintiff it should be in the amount of $2600.00.'' It seems clear to us from the context of the entire record that the "stipulation" at the outset of the trial was made orally and was reasonably understood by the judge not as an agreement that the ultimate finding, in the event of liability, should be $2,600, but rather as an agreement between the parties that the loss or damage sustained by the plaintiff on the night of the theft was $2,600. The Appellate Division treated the figure of $2,600 as representing the agreed amount of damages. We are not disposed to disturb the award made by the judge. *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 599.

*Order dismissing report affirmed.*