BRYAN, Justice.
St. Paul Fire & Marine Insurance Company (“St. Paul”) appeals from a summary judgment entered by the Chilton Circuit Court (“the trial court”). That judgment, among other things, granted the motion for a partial summary judgment filed by Willis Britt (“Britt”), as conservator of the estate of Michael D. Britt (“Michael”), and denied St. Paul’s motion for a summary judgment.

Facts and Procedural History

The facts of this case are undisputed. In 2004, Michael purchased a Beneteau brand sailboat (“the sailboat”). Although it is unclear when Michael first obtained insurance for the sailboat, the record indicates that, during the events giving rise to this case, Michael had insured the sailboat with St. Paul pursuant to a Seahorse Underwriters Boat Insurance Policy (“the policy”) that provided coverage limits of $85,000 for “accidental direct physical loss of or damage to [the sailboat] ... except as specifically stated or excluded in this policy.”
From 2004 onward, the sailboat served as Michael’s residence in Florida; Michael had no other established residence. In early September 2011, Michael telephoned Britt, Michael’s father, and told Britt that he had accepted a job driving a commercial truck and that he had to attend orientation for the new job in Oklahoma City, Oklahoma. Michael informed Britt that he planned to sail the sailboat from West Palm Beach, Florida, to Jacksonville, Florida, store the boat in Jacksonville, and rent a car in Jacksonville to drive to Oklahoma City for the orientation.
On or around September 11, 2011, Michael set sail for Jacksonville. On September 15, 2011, the United States Coast Guard boarded the sailboat approximately one mile off the coast of Cape Canaveral, *807 Florida, for a “cold hit” inspection. That inspection revealed that the sailboat was seaworthy as of September 15, 2011. There is no evidence of any severe weather in the Cape Canaveral area on September 15, 2011, or in the days immediately thereafter. Also on September 15, 2011, Michael telephoned Britt and informed Britt that, given a lack of wind, he would arrive in Jacksonville later than anticipated but that he would telephone Britt when he arrived. That telephone call never came, and, to the parties’ knowledge, no one has seen Michael or the sailboat since September 15, 2011, despite search efforts by Britt and his family, the United States Coast Guard, and Florida authorities.
The Coast Guard’s reports from its investigation into Michael’s, disappearance indicate that Michael last used his cellular telephone on September 17, 2011, at 11:58 p.m. to call a debt-collection agency that had a lien on the sailboat. The Coast Guard’s efforts to speak to someone at the debt-collection agency about the nature of that call were fruitless. The Coast Guard’s reports indicate that the last “hit” on Michael’s cellular telephone, which was on September 17, 2011, when he placed that last call, indicated that Michael was traveling in a southerly direction, away from Jacksonville, his stated destination. There is no record of Michael ever making an S.O.S. call or sending another distress signal.'
Coast Guard reports also indicate that Michael had “a history of not checking in with family for weeks at a time” and that he had been involved “in an unreported ... case previously, during which he was found far outside his expected area of operation.” That happened in July 2011, and, although Britt corroborated the Coast Guard’s report, he stated that the reason Michael had not contacted his family during that time was that his cellular telephone had gotten wet. Although Michael had been missing over ■ two years when Britt commenced the action underlying this appeal, Britt stated in his answers to interrogatories that, as of September 2, 2014, no federal, state, or local governmental agency had declared Michael dead. •
In October 2011, Britt contacted St. Paul to report the sailboat as lost. On February 14, 2012, Britt was appointéd conservator of Michael’s estate by the Chilton Probate Court. Shortly thereafter, Britt filed a claim with St. Paul for the lost sailboat.[1] On June 7, 2012, after conducting its own investigation into Michael’s disappearance, St. Paul sent Britt a letter in which it declined coverage for the sailboat. That letter states, in pertinent part:
“Based upon the facts we have learned to date, we must respectfully decline coverage at this time. We refer you to [Michael’s] insuring agreement, the ... Policy, which provides in relevant part:
“‘BOAT AND BOATING EQUIPMENT COVERAGE
“ ‘Coverage Provided:' We will pay for accidental direct physical loss of or damage to your boat or boating equipment except as specifically stated or excluded in this policy.

tí i

“‘Exclusions: We will not provide Boat and Boating Equipment Coverage for any loss or damage caused by or resulting from ... mysterious disappearance — ’
“Based on our investigation, we cannot at this time find any evidence, of ‘accidental direct physical loss or damage’ to *808 the vessel that would trigger coverage. Further, the circumstances surrounding the disappearance of the vessel appear to fall under the ‘mysterious disappearance’ exclusion in [Michael’s] insuring agreement. For these reasons, we have concluded that there is no coverage under the Policy for the disappearance of the vessel.”
(Capitalization in original.)
On January 2, 2014, Britt filed in the trial court a complaint against St. Paul asserting claims of breach of contract, bad faith, and fraud.[2] St. Paul filed a motion to dismiss the fraud claim. Britt did not respond to St. Paul’s motion, and the trial court dismissed the fraud claim on August 7, 2014. On September 5, 2014, St. Paul filed its answer to Britt’s complaint.
On September 15, 2014, St. Paul filed a motion for a summary judgment on Britt’s breach-of-contract and bad-faith claims; Britt filed a motion for a partial summary judgment on the breach-of-contract claim only. On October 6, 2014, each party filed a response in opposition to the other party’s summary-judgment motion. After a hearing on the motions, the trial court entered a judgment on October 14, 2014, that stated, in pertinent part:
“The ‘Boat and Boating Equipment Coverage’ section of the policy states St. Paul ‘will pay for accidental direct physical loss of or damage to your boat.’ The policy also provides that ‘[i]f your boat is totally destroyed or lost for more than thirty (30) days, we will pay the amount of Boat and Boating Equipment Coverage shown on the Declarations Page.’ The limits of coverage on the declarations page was $85,000. [Britt] also asserts a claim against St. Paul for its bad ■faith failure to pay the claim.
“The Court concludes [Britt’s] motion for partial summary judgment is GRANTED, and summary judgment is entered in favor of [Britt] on his breach-of-contract claim against St. Paul. [St. Paul’s] motion for summary judgment is DENIED. [Britt’s] bad faith claim is MOOT.”
(Capitalization in original.) In addition to entering a judgment for Britt on the breach-of-contract claim and ruling that the bad-faith claim was thus rendered moot, the trial court’s October 14, 2014, judgment also awarded Britt $74,950 in damages, with interest.
On November 12, 2014, St. Paul filed a motion to alter, amend, or vacate the trial court’s October 14, 2014, judgment; on December 12, 2014, Britt filed a response in opposition to St. Paul’s motion. After hearing arguments on St. Paul’s motion, the trial court denied the motion on December 16, 2014. St. Paul timely appealed.
On appeal, St. Paul raises four issues: (1) Whether Britt carried his burden of showing that his insurance claim fell within the coverage provided by the policy; (2) whether an exclusion in the policy exempted Britt’s claim from coverage; (3) whether the trial court erred in relying on alleg *809 edly inapplicable provisions of the policy in determining that the policy provided coverage for Britt’s claim; and (4) whether the trial court erred in calculating the interest due on any damages to which Britt was entitled.

Standard of Review

“We review a summary judgment pursuant to the following standard:
“ ‘This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether .the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce “substantial evidence” as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.’
“Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).” Tender Care Veterinary Hosp., Inc. v. First Tuskegee Bank, 168 So.3d 33, 37 (Ala.2014). “When a trial court interprets an insurance policy as a matter of law, that interpretation is subject to a de novo re-viéw.” Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1009 (Ala.2005).

Discussion

I. The Policy
Before addressing the parties’ arguments, it is necessary to set forth some pertinent details of the policy. It is undisputed that the policy is an all-risk policy.
“An all risk policy is one which provides coverage against all risks, the words typically being inserted in writing, covering every loss that may happen except by the fraudulent acts of the insured. Morrison Grain Co. v. Utica Mutual Ins. Co., 446 F.Supp. 415, 420 (M.D.Fla.1977), aff'd in part, remanded in part, 632 F.2d 424 (5th Cir.1980). Accordingly, ‘an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage.’ Dow Chemical Co. v. Royal Indem. Co., 635 F.2d 379, 386 (5th Cir. 1981) (citing, among others, Morrison Grain, 632 F.2d at 424).”
International Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co., 944 F.Supp. 886, 891-92 (M.D.Fla. 1996) (emphasis added).[3] See also 10A Lee R. Russ et al., Couch on Insurance *810 § 148:50 (3d ed.) (noting that, under an all-risk policy, “recovery is allowed for fortuitous losses unless the loss is excluded by a specific policy provision”). Thus, although an all-risk policy may, in name, give the impression that it provides coverage for any conceivable loss or damage to the insured property, it is clear that an insurer may limit the scope of its liability, even in an all-risk policy, by including exclusionary provisions in the contract.
In this case, two provisions of the policy are pertinent to our review. First, the policy includes an exclusion from coverage for any loss resulting from “mysterious disappearances” (“the mysterious-disappearance exclusion”). The policy does not define the phrase “mysterious disappearances.” Secondly, another provision (“the 30-day provision”) found in the “Payment for a Loss” paragraphs of the “Boat and Boating Equipment Coverage” section of the policy reads: “If your boat is totally destroyed or lost for more than thirty (30) days, we will pay the amount ... shown on the Declaration Page.” The policy also does not define “lost.” It is clear from the October 14, 2014, judgment that the trial court relied on the 30-day provision to afford Britt relief.
Initially, the parties argue whether Britt carried his burden of establishing that his claim on the policy falls within the parameters of coverage provided by the policy. See 17A Lee R. Russ et ah, Couch on Insurance § 254:11 (3d ed.) (“Generally speaking, the insured bears the burden of proving all elements of a prima facie case including ... the loss as within policy coverage .... ”); Motors Ins. Corp. v. Williams, 576 So.2d 218, 219 (Ala.1991) (noting that the plaintiff, insured under a policy including uninsured-motorist coverage, carried the burden of proving that the tortfeasor was uninsured); and Colonial Life & Accident Ins. Co. v. Collins, 280 Ala. 373, 376, 194 So.2d 532, 535 (1967) (noting that the plaintiff, as beneficiary of the insured’s life-insurance policy, carried the burden of proving “that the insured’s death resulted from injuries sustained in such manner as to bring him within the coverage of the policy”). However, because all-risk policies generally include coverage for any losses not excluded or resulting from the insured’s fraudulent conduct and because we find another issue dispositive of this appeal, we need not address those arguments. For purposes of this decision, we assume, without deciding, that Britt carried his burden of showing that the loss of the sailboat was, absent an exclusion in the policy, covered by the policy.
II. The Mysterious-Disappearance Exclusion
Our first inquiry, assuming, as we have, that Britt carried his burden of establishing coverage, is whether the mysterious-disappearance exclusion applies. St. Paul argues that, because there is no evidence indicating what happened to the sailboat, Britt’s claim falls squarely within the mysterious-disappearance exclusion. Britt argues, on the other hand, that because the policy does not define “mysterious disappearance” and because the mysterious-disappearance exclusion is, he says, “amenable to multiple definitions and interpretations,” the mysterious-disappearance exclusion is ambiguous and should therefore be construed strictly against St. Paul.
The rules of contract interpretation ai’e well settled. “The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide.” State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 308 (Ala.1999).
“ ‘If a word or phrase is not defined in [an insurance] policy, then the court should construe the word or phrase according to the meaning a person of *811 ordinary intelligence would reasonably give it. The court should not define words it is construing based on technical or legal terms.’
“Safeway Ins. Co. of Alabama, Inc. v. Herrera, 912 So.2d 1140, 1143 (Ala.2005) (citations omitted).”
Travelers Cas. & Sur. Co. v. Alabama Gas Corp., 117 So.3d 695, 700 (Ala.2012).
“ ‘ “When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured’s position would have understood them. Western World Ins. Co. v. City of Tuscumbia, 612 So.2d 1159 (Ala.1992); St. Paul Fire & Marine Ins. Co. v. Edge Mem’l Hasp., 584 So.2d 1316 (Ala.1991). If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply. Bituminous Cas. Corp. v. Harris, 372 So.2d 342 (Ala.Civ.App.1979). Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction. Canal Ins. Co. v. Old Republic Ins. Co., 718 So.2d 8 (Ala.1998). A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. Watkins v. United States Fid. & Guar. Co., 656 So.2d 337 (Ala.1994). A court must not rewrite a policy so as to include or exclude coverage that was not intended. Upton v. Mississippi Valley Title Ins. Co., 469 So.2d 548 (Ala.1985).”
“ ‘B.D.B. v. State Farm Mut. Auto. Ins. Co., 814 So.2d 877, 879-80 (Ala.Civ.App.2001). However, if a provision in an insurance policy is found to be genuinely ambiguous, “policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer.” Crossett v. St. Louis Fire & Marine Ins. Co., 289 Ala. 598, 603, 269 So.2d 869, 873 (1972),’
“State Farm Mut. Auto. Ins. Co. v. Brown, 26 So.3d 1167, 1169-70 (Ala. 2009)....”
Travelers, 117 So.3d at 699-700 (emphasis omitted). ,
Because the policy, does not define “mysterious disappearance,” this..Court must give the phrase the common, everyday meaning a reasonable person of ordinary intelligence would give it.. If that meaning is “reasonably certain,” 117 So.3d at 699, then the phrase is not ambiguous as a matter of law and no rule of construction favoring Britt is applicable.
Although this Court has not previously defined “mysterious disappearance” within the context of an insurance-policy exclusion, other jurisdictions have. The Supreme Court of North Carolina first defined “mysterious disappearance” within an insurance policy as “any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain.” Davis v. St. Paul Mercury & Indem. Co., 227 N.C. 80, 83, 40 S.E.2d 609, 611 (1946). Since North-Carolina decided Davis, other jurisdictions have tracked the language from Davis in defining “mysterious . disappearance.”[4] *812 We also note that, although this Court has not yet defined “mysterious disappearance,” the Alabama Court of Civil Appeals adopted the language from Davis in St. Paul Fire & Marine Insurance Co. v. Thompson, 346 So.2d 439, 441 (Ala.Civ.App.1977), and certain treatises have also tracked the language from Davis in defining a “mysterious disappearance.” See 43 Am.Jur.2d Insurance § 500 (2015); 10A Lee R. Russ et al., Couch on Insurance § 151:40 (3d ed.).
Britt argues, correctly, that most of the mysterious-disappearance cases St. Paul cites — which are included, among others, in note 4 of this opinion — for their definitions of the phrase “mysterious disappearance” involve theft policies, not all-risk policies, and many of those cases presumed the mysterious disappearance to have been the result of theft and, thus, provided, rather than excluded, coverage for the mysterious disappearance. Britt argues, therefore, that the definition of “mysterious disappearance” adopted by those jurisdictions is inapplicable here.
Britt’s reliance on those distinctions, however, is irrelevant for the purpose of defining “mysterious disappearance.” We see no reason why the common, everyday meaning of the phrase “mysterious disappearance” should vary depending on whether the insurance policy in which it appears is a theft policy or an all-risk policy, or on whether the policy provides or excludes coverage for mysterious disappearances. Our purpose here is to define a “mysterious disappearance.” “The quoted judicial definition [set forth in Davis ] has been approved in most of the reported ‘mysterious disappearances’ cases.... Doubting our ability to improve upon this definition, we likewise will use it.” Hammontree v. Central Mut. Ins. Co., 385 S.W.2d 661, 666 (Mo.Ct.App.1965). We also will use it.
We think it “reasonably certain,” Travelers, 117 So.3d at 699, that there is only one manner in which a person of ordinary intelligence would interpret the phrase “mysterious disappearance.” That is, if insured property cannot be found and the circumstances surrounding its disappearance are so “unknown, puzzling[,] or baffling,” Davis, 227 N.C. at 83, 40 S.E.2d at 611, as to make the disappearance inexplicable, a person of ordinary intelligence would determine that disappearance to be “mysterious.” If, on the other hand, there is evidence to support a logical inference as to what happened to the insured property, even though that evidence is inconclusive, a person of ordinary intelligence would not find the circumstances so “unknown, puzzling[,] or baffling,” id., as to determine that the disappearance of the insured property . was inexplicable. Strengthening our reasoning is the fact that our research has revealed no cases in which courts from other jurisdictions have held the phrase “mysterious disappear- *813 anee” to be ambiguous.[5] Furthermore, although Britt argues that the mysterious-disappearance exclusion is open to multiple interpretations, he provides no alternative definitions for the phrase. Thus, we hold that the mysterious-disappearance exclusion is not ambiguous as a matter of law. Accordingly, we will not liberally construe the mysterious-disappearance exclusion in favor of Britt.
That, however, does not end our inquiry. As the insurer, St. Paul carried the burden of showing that the circumstances surrounding the loss of the sailboat brought the loss within the parameters of the mysterious-disappearance exclusion. Acceptance Ins. Co. v. Brown, 832 So.2d 1, 12 (Ala.2001).
There is no shortage of speculation as to what happened to the sailboat. Michael’s mother, Alice Britt, stated in her deposition that the disappearance of the sailboat could be attributed to a rogue Coast Guard employee who alerted drug traffickers to the presence of a single-passenger sailboat in the Atlantic; to modern pirates; or to the jet stream carrying the sailboat to Iceland or Ireland. However, she admitted that there was no evidence to support any of those theories and that they were merely speculations on her part. Britt stated that he believed the sailboat was on the bottom of the Atlantic Ocean, but he, likewise, stated that there was no evidence to support that conclusion. Ruth Zevnik, a close friend of Michael’s, told St. Paul representatives that she believed Michael “just wanted to disappear and is likely living somewhere aboard [the sailboat] and purposely ‘got lost.’ ” However, she, too, had no evidence upon which to base her speculation.
Any of the speculations put forth by Michael’s family and friends are just that—speculations. There is no evidence in the record to support any theory as to what happened to the sailboat. If the record contained any evidence that could support a theory as to what happened to the sailboat, we would be inclined to hold that there was a genuine issue of material fact that would preclude a summary judgment.- However, that evidence does not exist, and, as we noted above, the facts are undisputed. If the undisputed facts in this case do not constitute a mysterious disappearance, then this Court is at a loss as to what facts would. Thus, we conclude that St. Paul has carried its burden of showing that Britt’s claim on the policy falls within the mysterious-disappearance exclusion.
We are well aware of the rule of law requiring us to interpret an exclusion in an insurance 'policy “as narrowly as possible, so as to provide maximum coverage for the insured.” Cincinnati Ins. Co. v. Lee Anesthesia, P.C., 641 So.2d 247, 249 (Ala.1994). However, that rule means neither that exclusions in insurance policies are .invalid nor that they are never applicable.
Furthermore, we are equally aware of the rule of law providing that courts “ ‘must not rewrite [an insurance] policy so as to include or exclude coverage that was not intended.’ ” State Farm Mut. Auto. Ins. Co. v. Brown, 26 So.3d 1167, 1169 (Ala.2009) (quoting B.D.B. v. State Farm Mut. Auto. Ins. Co., 814 So.2d 877, 879-80 (Ala.Civ.App.2001) (emphasis added)). Even when the mysterious-disappearance exclusion is construed as narrowly as possible, the facts surrounding the *814 disappearance of the sailboat in this case fall within that, exclusion. To hold otherwise would be to construe the policy so as to provide coverage that St. Paul never intended to provide. “Where there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties_” Porterfield v. Audubon Indem. Co., 856 So.2d 789, 806 (Ala. 2002) (emphasis added).
III. The 30-Day Provision
Our holding that the mysterious-disappearance exclusion applies in this case does not end the discussion. Britt argues that the mysterious-disappearance exclusion conflicts with the 30-day provision that, he says, provides coverage for the sailboat when it has been lost for more than 30 days. That alleged conflict, Britt argues, creates an ambiguity in the contract that results in coverage that is illusory.
“ ‘When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory.’ Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618, 620 (Fla.Dist.Ct.App.1997)., Alabama law does not ‘ “countenance such illusory ‘coverage.’ ” ’ Industrial Chem. & Fiberglass Corp. v. Hartford Accident & Indem. Co., 475 So.2d 472, 479 (Ala.1985) (quoting Sears, Roebuck & Co. v. Reliance Ins. Co., 654 F.2d 494, 499 (7th Cir. 1981)).”
Shrader v. Employers Mut. Cas. Co., 907 So.2d 1026, 1033 (Ala.2005). Thus, we must determine whether the mysterious-disappearance exclusion completely contradicts the 30-day provision so as to make coverage under the policy illusory.
Britt argues that, because the sailboat had not been seen in over three years when the trial court entered the October 14, 2014, judgment, it was “lost” within the meaning of the 30-day provision. St. Paul argues, on the other hand, that the 30-day provision does not provide coverage but, rather, sets forth the time in which payment for a loss will be made once the insured has established that the loss is covered under the policy.
First, we address St. Paul’s contention that the 30-day provision does not create coverage. St. Paul’s argument is essentially that, because the 30-day provision is found in the paragraphs under the heading “Payment for a Loss” of the “Boat and Boating Equipment Coverage” section of the policy, it sets forth only the time in which a claim will be paid once coverage is established. St. Paul contends that it is clear that the only paragraph of the “Boat and Boating Equipment Coverage” section of the policy that establishes coverage is the paragraph entitled “Coverage • Provided.” However, that contention is without merit. Other paragraphs of the “Boat and Boating Equipment Coverage” section of the policy also establish coverage, e.g., expenses incurred to minimize or prevent additional damage to the sailboat, expenses incurred while safeguarding the sailboat from storms, expenses incurred for commercial towing and assistance, and expenses incurred while assisting another vessel in imminent danger. Furthermore, in keeping with the requirement that we interpret contract provisions as a reasonable person of ordinary intelligence would, a reasonable person of ordinary intelligence would interpret the 30-day provision as providing coverage when the sailboat has been lost for 30 days. Thus, we disagree with St. Paul that the 30-day provision establishes only, a time frame in which St. Paul will provide coverage. Instead, *815 we conclude that the 30-day provision requires St. Paul to provide coverage when the boat has been lost for more than 30 days.
The question then becomes, does the 30-day provision, when read in conjunction with the mysterious-disappearance exclusion, render the coverage provided by the policy illusory. As Britt notes in his brief to this Court: “If a boat has been lost for more than [30] days, it must have disappeared. But not all disappearances are mysterious disappearances,” Britt’s brief at 41 (emphasis added). That sentence, in our opinion, sums up the manner in which the 30-day provision and the mysterious-disappearance exclusion can be read together as complementary, not contradictory, clauses. In other words, it is the application of the word “mysterious,” i.e., those disappearances that are inexplicable, that determines whether the missing sailboat will be covered or excluded.
The case of Aqua Craft I, Inc. v. Boston Old Colony Insurance Co., 136 Misc.2d 465, 518 N.Y.S.2d 863 (N.Y.Sup.Ct.1987), is instructive. In Aqua Craft, the • plaintiff had insured his yacht with the defendant under a marine policy providing coverage for, among other things, theft of the vessel. One evening the plaintiff tied' his yacht to a dock and locked and chained it, only to return the next day to find the lock forced open, the lines cut, and the yacht gone. The plaintiff,’attributing the disappearance of the yacht to thieves, filed a claim with the defendant for the loss of the yacht. The defendant insurer moved for a summary judgment on the ground that the missing yacht constituted a mysterious disappearance not covered by the insurance policy.[6] In rejecting the insurer’s argument, the court noted that “[t]here would be a ‘mysterious disappearance’ if the ship had sailed off into the sunset and had never been heard from again. Here, the ship did not drift off, or quietly settle to the bottom. Incontrovertibly, there was a theft.” 136 Misc.2d at 459, 518 N.Y.S.2d at 866. In Aqua Craft, there was no dispute that the yacht had disappeared. However, the broken lock, the cut lines, and the insured’s testimony that he had secured the yacht the prior evening supported the logical conclusion that the yacht had been stolen. Thus, even though the yacht could not be located, circumstantial evidence supported the conclusion that the disappearance of the yacht was not “mysterious” so as to exclude its loss from coverage.
Similarly, in the present case, there are circumstances where the disappearance or loss of the sailboat for more than 30 days would be covered under the policy. For example, suppose the sailboat had disappeared under the same circumstances as did the yacht in Aqua, Craft. Assuming no. other applicable exclusion, we would say that circumstantial evidence supported the logical conclusion that the disappearance of the sailboat could be attributed to theft and that, as a result, the disappearance of the sailboat was not mysterious. Consider another scenario — one where Michael was sailing- and encountered some calamity — perhaps damage to the hull of the sailboat or a storm — that caused it to sink, and, although Michael was rescued, the sailboat was never recovered. Is there any doubt that, under those *816 circumstances, the sailboat would be lost? However, we would hardly consider that disappearance to be mysterious. To the contrary, there would be direct evidence, in the form of Michael’s testimony, as to what had happened to the sailboat. Those two examples, though not exclusive, provide circumstances where, through either direct evidence or circumstantial evidence, a trier of fact would be able to conclude that the loss of the sailboat was not mysterious and, thus, that the policy provided coverage for the loss. It is only when policy provisions “completely contradict,” Shrader, 907 So.2d at 1033, each other that coverage becomes illusory. Thus, because the coverage provided by the 30-day provision and the limitations on coverage provided by the mysterious-disappearance exclusion do not contradict each other, the coverage of the policy is not illusory.
IV. ' Conclusion
The mysterious-disappearance exclusion is not ambiguous, nor does it conflict with the 30-day provision; rather, the policy, when read as a whole, can accommodate both provisions — one providing coverage and one excluding coverage. Because we hold that the mysterious-disappearance exclusion is unambiguous and does not conflict with the 30-day provision, and because there is no genuine issue of material fact concerning the disappearance of the sailboat, the trial court should have entered a summary judgment in St. Paul’s favor on both Britt’s breach-of-contract and bad-faith claims. Thus, we reverse the trial court’s judgment and remand the case for the trial court to enter a summary judgment in favor of St. Paul on Britt’s breach-of-contract and bad-faith claims.[7]
REVERSED AND REMANDED WITH INSTRUCTIONS.
STUART, BOLIN, MURDOCK, SHAW, MAIN, and WISE, JJ„ concur.
MOORE, C.J., and PARKER, J., concur in the result.

. It is unclear exactly when Britt filed the claim, but St, Paul’s letter acknowledging receipt of the claim is dated March 5, 2012. Thus, Britt presumably filed the claim sometime between February 14, 2012, and March 5, 2012.

. The last sentence of each claim in Britt’s complaint demands damages "in an amount which does not exceed the total sum of $74,950.” St. Paul, interpreting the complaint as' seeking a total of $224,850 in damages, filed to remove the case to the United States District Court for the Middle District of Alabama, Northern Division. , On February 10, 2014, the trial court entered an order removing the case to the federal court. However, after Britt filed in the federal court a declaration that he had not intended to seek damages in excess of $74,950 and that he would agree to be bound by a damages cap of $74,950, St. Paul conceded that the case should be transferred back to the trial court. On April 10, 2014, the federal court entered an order transferring the case back to the trial court.

. For other jurisdictions holding that insurers may exclude certain losses from coverage in all-risk policies, see also JAW The Pointe, L.L.C. v. Lexington Ins. Co., 460 S.W.3d 597, 604 (Tex.2015); Marisco v. Allstate Ins. Co., 160 So.3d 1169, 1173 (Miss.Ct.App.2014); Widder v. Louisiana Citizens Prop. Ins. Corp., 82 So.3d 294, 296 (La.Ct.App.2011); HCA, Inc. v. American Prot. Ins. Co., 174 S.W.3d 184, 187 (Tenn.Ct.App.2005); and Hartford Cas. Ins. Co. v. Evansville Vanderburgh Pub. Library, 860 N.E.2d 636, 645 (Ind.Ct.App.2007).

. See Caldwell v. St. Paul Mercury & Indem. Co., 210 Miss. 320, 329, 49 So.2d 570, 572 (1950); Sigel v. American Guarantee & Liab. Ins. Co., 173 Pa.Super. 434, 437, 98 A.2d 376, 378 (1-953); Decider v. Travelers Indem. Co., 94 So.2d 55, 58 (La.Ct.App.1957); Seward v. Assurance Co. of Am., 32 Cal.Rptr. 821, 823, 218 Cal.App.2d Supp. 895, 899 (1963); Ham *812 montree v. Central Mut. Ins. Co., 385 S.W.2d 661, 666 (Mo.Ct.App.1965); Claiborne v. United States Fire Ins. Co., 193 So.2d 315, 317 (La.Ct.App.1966); Gifford v. M.F.A. Mut. Ins. Co., 437 S.W.2d 714, 716 (Mo.Ct.App.1969); Mancha v. St. Paul Fire & Marine Ins. Co., 474 S.W.2d 563, 566 (Tex.App.1971); Aetna Ins. Co. v. Zoblotsky, 481 P.2d 761, 763 (Okla. 1971); Corcoran v. Hartford Fire Ins. Co., 132 N.J.Super. 234, 241, 333 A.2d 293, 297 (1975); Lovas v. St. Paul Ins. Cos., 240 N.W.2d 53, 57 (N.D.1976); Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co., 545 F.2d 448, 451 (5th Cir.1977); Ward Cattle Co. v. Farm Bureau Ins. Co. of Nebraska, 223 Neb. 69, 73, 388 N.W.2d 89, 92 (1986); Libralter Plastics, Inc. v. Chubb Grp. of Ins. Cos., 199 Mich.App. 482, 488, 502 N.W.2d 742, 745 (1993); and Farmland Indus., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 333 F.Supp.2d 1133, 1142 (D.Kan.2004).

. A few cases have determined that exclusions that incorporated the phrase “mysterious disappearance” were ambiguous. However, the courts in those cases found the exclusions to be ambiguous not because of the mysterious-disappearance language but because of some other aspect. See, e.g., McCormick & Co. v. Empire Ins. Grp., 878 F.2d 27 (2d Cir.1989).

. Although the insurance policy in Aqua Craft did not contain an explicit mysterious-disappearance exclusion, the policy required physical evidence supporting a conclusion of theft before the defendant would provide, coverage. In the absence of that evidence, the disappearance would, the, defendant argued, be mysterious and, thus, excluded from coverage.

. Because we are directing the trial court to enter a summary judgment in favor of St. Paul, any discussion of the calculation of interest is pretermitted.